# EXHIBIT O

TODD STOKES - 03/02/2016

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3

 4

 5   BONNIE CARDOZA, an              )
     individual on behalf of         )
 6   herself and on behalf of all    )
     persons similarly situated;     )
 7                                   )  Case No.
                      Plaintiff,     )  3:15-cv-01634-SBA
 8                                   )
            vs.                      )
 9                                   )
     WAL-MART ASSOCIATES, INC., a    )
10   Corporation; and DOES 1         )
     through 50, inclusive;          )
11                                   )
                      Defendants.    )
12   _____)

13

14

15             DEPOSITION OF TODD STOKES

16                  Irvine, California

17             Wednesday, March 2, 2016

18

19

20

21

22

23   Reported by:
     Lynda L. Fenn, CSR, RPR
24   CSR No. 12566
     JOB No. LA-071880
25
```

1    BY MS. MUKHERJEE:
2        Q    So now with the changes --
3        A    Uh-huh.
4        Q    -- what kind of schedules are the assistant
5    managers working in California?
6        A    So they're going to -- they're going to vary,
7    as they have in the past, but you'll see an assistant
8    manager will now be assigned -- there's some guidelines.
9    I don't know if I can speak exactly, but they're going
10   to be assigned a certain number of days during the month
11   that they will work on a weekend and a certain number of
12   days that they would close during the week.
13           And aside from that it's going to be the store
14   manager putting that kind of schedule together to make
15   sure we have leadership in the building.  And then as an
16   assistant, there's a pretty decent amount of flexibility
17   as well, so if they have -- the schedule may be
18   produced, but the assistant manager may have a need to
19   come in and take a look at, you know, a new layout in
20   electronics, as an example, so they may come in at a
21   different time and, you know, just coordinate that with
22   the leadership team and say, hey, I need to work a
23   different schedule today because I need to do this.
24           So there's some pretty decent flexibility with
25   that -- with that position.

 1      A    That is correct.
 2      Q    Okay.  Now, I remember you had previously
 3   testified that for the assistant manager role that if
 4   you wanted to change your shift, it was pretty easy to
 5   go and make adjustments to your schedule; is that
 6   correct?
 7      A    That is correct.
 8      Q    Okay.  When an assistant manager makes
 9   adjustments or changes to his or her schedule, is it
10   customary or required that the actual schedule be
11   changed or is it just a verbal exchange without anything
12   being changed on the physical schedule?
13           MR. HERRINGTON:  Object to form.
14           THE WITNESS:  So I don't know if I can speak
15   on every circumstance.  I would say it's not required,
16   but I think it's a good practice that it would be
17   updated so that everybody knows when the person is going
18   to be there.  But I don't know that you could pinpoint
19   it down and say it's happened every single time.
20           MS. MUKHERJEE:  Okay.
21   BY MS. MUKHERJEE:
22      Q    According to the first schedule here in
23   Exhibit No. 6 on DOC 2707, the assistant managers
24   appears to have 12.5 hour shifts.
25           Is that what the 7:30 to 8:00 means?

```
 1   policy that applies to all associates.
 2   BY MS. MUKHERJEE:
 3       Q    Including exempt associates?
 4       A    So, it says, "All associates," I think on the
 5   policy, if I remember right.
 6       Q    Okay.  And what was it called?
 7       A    I believe it's our meal and break policy, if I
 8   remember the term on the top of the document right.
 9            MR. HERRINGTON:  That's what it says.
10            MS. MUKHERJEE:  Okay.
11            MR. HERRINGTON:  It might even be California
12   specific.
13            MS. MUKHERJEE:  Okay.
14            MR. HERRINGTON:  I think there's two.  I
15   believe there's a national one and a California one.
16            THE WITNESS:  It's very likely.
17            MR. HERRINGTON:  Yeah.
18   BY MS. MUKHERJEE:
19       Q    Do store managers or co-managers have any
20   responsibility to make sure that assistant managers are
21   taking meal breaks even though they are not clocking out
22   of anything?
23       A    So -- no, and I'll tell you why -- why that
24   is.
25            So again, it goes -- you are going to say you
```

 1   keep saying the same thing, but the managers have a lot
 2   of flexibility and they've got their ability to use
 3   their independent judgment so they know when they need
 4   to stop and take a break and they've got the ability to
 5   step away for the business when they need to take a
 6   break, likewise for their lunch.
 7            They don't punch a clock so there's no way to
 8   track when the person actually came in or was leaving
 9   for the day, but they do know that that's available and
10   they should have taken their lunches and breaks.
11       Q   Okay.
12           (Plaintiff's Exhibit 19 was marked for
13   identification by the Certified Shorthand Reporter and
14   is attached hereto.)
15           THE WITNESS:  Thank you.
16   BY MS. MUKHERJEE:
17       Q   So, if you can take a look at what's been
18   marked as Exhibit No. 18.  It is annual performance
19   evaluation --
20       A   Is that 19?
21           MR. HERRINGTON:  Exhibit No. 19.
22           MS. MUKHERJEE:  Nineteen.  Did I say 18?
23   BY MS. MUKHERJEE:
24       Q   If you look at Exhibit No. 19, it is the
25   annual performance evaluation for Bonnie Cardoza for

```
 1   STATE OF CALIFORNIA       )
 2                             )   ss.
 3   COUNTY OF LOS ANGELES     )
 4        I, Lynda L. Fenn, Certified Shorthand
 5   Reporter No. 12566 for the State of California, do
 6   hereby certify:
 7        That prior to being examined, the witness named in
 8   the foregoing deposition was duly sworn to testify the
 9   truth, the whole truth, and nothing but the truth;
10        That said deposition was taken down by me in
11   shorthand at the time and place therein named and
12   thereafter reduced by me to typewritten form and that
13   the same is a true, correct, and complete transcript of
14   said proceedings.
15        Before completion of the deposition, review of the
16   transcript [ ] was [ ] was not requested.  If
17   requested, any changes made by the deponent (and
18   provided to the reporter) during the period allowed are
19   appended hereto.
20        I further certify that I am not interested in the
21   outcome of the action.
22        Witness my hand this 8th day of March 2016.
23
24                              _____
25                              Lynda L. Fenn, CSR, RPR
```